AO 106A (08/18) Application for a Warrant by Telephone or Other Reliable Electronic Means

# UNITED STATES DISTRICT COURT
for the
Southern District of California

In the Matter of the Search of )
*(Briefly describe the property to be searched* )
*or identify the person by name and address)* )
Gold PCD Phone )   Case No.   26mj0257
Case Number: SYS-26-01-0033 )
("Target Device") )

## APPLICATION FOR A WARRANT BY TELEPHONE OR OTHER RELIABLE ELECTRONIC MEANS

I, a federal law enforcement officer or an attorney for the government, request a search warrant and state under penalty of perjury that I have reason to believe that on the following person or property *(identify the person or describe the property to be searched and give its location)*:

See Attachment A, incorporated herein by reference.

located in the     Southern     District of     California     , there is now concealed *(identify the person or describe the property to be seized)*:

See Attachment B, incorporated herein by reference.

The basis for the search under Fed. R. Crim. P. 41(c) is *(check one or more)*:

☑ evidence of a crime;

☐ contraband, fruits of crime, or other items illegally possessed;

☐ property designed for use, intended for use, or used in committing a crime;

☐ a person to be arrested or a person who is unlawfully restrained.

The search is related to a violation of:

| Code Section | Offense Description |
|---|---|
| Title 8 U.S.C., Sec. 1324 | Bringing in aliens for financial gain |
| Title 8 U.S.C., Sec. 2 | Aiding and abetting |

The application is based on these facts:
See Attached Affidavit of CBP Enforcement Officer Desirae M. Zavala, U.S. Customs and Border Protection, incorporated herein by reference.

☑ Continued on the attached sheet.

☐ Delayed notice of ____ days *(give exact ending date if more than 30 days:* ____ *)* is requested under 18 U.S.C. § 3103a, the basis of which is set forth on the attached sheet.

*Applicant's signature*

Desirae M. Zavala, U.S. CBP Officer
*Printed name and title*

Attested to by the applicant in accordance with the requirements of Fed. R. Crim. P. 4.1 by
        telephone                   *(specify reliable electronic means)*.

Date:     01/21/2026

*Judge's signature*

City and state:  San Diego, California     HON. BARBARA L. MAJOR, U.S. Magistrate Judge
*Printed name and title*

# ATTACHMENT A
## PROPERTY TO BE SEARCHED

The following property is to be searched:

  Gold PCD Phone

  Case Number: SYS-26-01-0033

  ("**Target Device**")

**Target Device** is currently in the custody of the Department of Homeland Security, Customs and Border Protection, 720 E. San Ysidro Blvd., San Ysidro, CA.

**ATTACHMENT B**

ITEMS TO BE SEIZED

Authorization to search the cellular telephone described in Attachment A includes the search of disks, memory cards, deleted data, remnant data, slack space, and temporary or permanent files contained on or in the cellular telephone for evidence described below. The seizure and search of the cellular telephone shall follow the search methodology described in the affidavit submitted in support of the warrant.

The evidence to be seized from the cellular telephone will be electronic records, communications, and data such as emails, text messages, chats and chat logs from various third-party applications, photographs, audio files, videos, and location data, for the period of January 6, 2025, up to and including January 20, 2026:

a. tending to indicate efforts to bring in aliens without lawful status for private financial gain or commercial advantage from Mexico into the United States;

b. tending to identify accounts, facilities, storage devices, and/or services–such as email addresses, IP addresses, and phone numbers–used to bring in aliens without lawful status for private financial gain or commercial advantage;

c. tending to identify co-conspirators, criminal associates, or others involved in the bringing in of aliens without lawful status for private financial gain or commercial advantage;

d. tending to identify travel to or presence at locations, such as stash houses, load houses, or delivery points involved in the bringing in aliens without lawful status for private financial gain or commercial advantage;

e. tending to identify the user of, or persons with control over or access to, the Target Devices; and/or

f. tending to place in context, identify the creator or recipient of, or establish the time of creation or receipt of communications, records, or data involved in the activities described above.

# AFFIDAVIT

I, Desirae M. Zavala, being duly sworn, hereby state as follows:

## INTRODUCTION

1. I submit this affidavit in support of an application for warrant to search the following electronic device:

> Gold PCD Phone
> Case Number: SYS-26-01-0033
> (**"Target Device"**)

as further described in Attachment A, and to seize evidence of crime, specifically, violations of Title 8, United States Code, Section 1324 (a)(2)(B)(ii) and Title 18, United States Code, Section 2 (Bringing in Aliens for Financial Gain and Aiding and Abetting), as further described in Attachment B.

2. The requested warrant relates to the investigation and prosecution of Arnold COLORES (Defendant) for Bringing in Aliens into the United States for Financial Gain and Aiding and Abetting. The **Target Device** is currently in the custody of Department of Homeland Security, Customs and Border Protection, 720 E. San Ysidro Blvd., San Ysidro, California.

3. The facts set forth in this affidavit are based upon my personal observations, my training and experience, and information obtained from various law enforcement personnel and witnesses, including my review of reports prepared by other law enforcement officers and agents. This affidavit is intended to show that there is sufficient probable cause for the requested warrant and does not purport to set forth all of my knowledge of the investigation into this matter. Dates and times are approximate.

## TRAINING AND EXPERIENCE

4. I have been employed by U.S. Customs and Border Protection since 2019 and am currently assigned to the San Ysidro, California Criminal Enforcement Unit. I graduated from the CBP Basic Academy at the Federal Law Enforcement Training Center

in Glynco, Georgia. I am a Federal Law Enforcement Officer within the meaning of Rule 41(a)(2)(C), Federal Rules of Criminal Procedure and have been a Federal Law Enforcement Officer for approximately six years. I am authorized by Rule 41(a) Federal Rules of Criminal Procedure to make applications for search and seizure warrants and serve arrest warrants. I have experience and have received training with respect to conducting investigations of immigration and criminal violations of Titles 8, 18, 19, and 21 of the United States Code.

5. My current duties involve the preparation of criminal and administrative cases for prosecution, including the use of linking related subjects and information via electronic equipment and telephones. In the course of my duties, I investigate and prepare for prosecution cases against persons involved in the inducement, transportation, and harboring of illegal aliens into and within the United States; and the utilization of illegally-obtained, counterfeit, altered or genuine immigration documents by illegal aliens to illegally gain entry or remain in the United States.

6. During my tenure as a CBP Officer, I have participated in the investigation of a number of cases involving the smuggling of aliens from Mexico into the United States and transportation of illegal aliens within the United States, which have resulted in the issuance of arrest warrants, search warrants, seizure warrants, and the indictments of persons for alien smuggling, including drivers, passengers, and guides.

7. Through the course of my training, investigations, and conversations with other law enforcement personnel, I have gained a working knowledge of the operational habits of alien smugglers and alien transporters, in particular those who attempt to smuggle aliens into the United States from Mexico and transport them throughout the Southern District of California. I am aware that it is a common practice for alien smugglers to work in concert with other individuals and to do so by utilizing cellular telephones to maintain communications with co-conspirators and/or illegal aliens in order to further their criminal activities. Because they are mobile, the use of cellular telephones permits alien smugglers and transporters to easily carry out various tasks related to their smuggling activities,

2

including, *e.g.*, remotely monitoring the progress of the aliens while the aliens are in transit, providing instructions to transporters, guiding aliens to specific pick up locations, warning accomplices about law enforcement activity in the area and the status of check-point operations, and communicating with co-conspirators who guide aliens, coordinate drop off locations, and/or operate alien stash houses.

8. The smuggling of aliens generates many types of evidence, including, but not limited to, cellular phone-related evidence such as voicemail messages referring to the arrangements of travel, names, photographs, text messaging (via SMS or other applications), and phone numbers of co-conspirators and illegal aliens. For example, drivers and passengers responsible for transporting illegal aliens are typically in telephonic contact with co-conspirators immediately prior to and/or following the crossing of the illegal aliens at the border, at which time they receive instructions, including where to pick-up the illegal aliens for transportation into the United States and where to take the illegal aliens after crossing into the United States. These communications may also include locations for delivery to stash houses and/or sponsors. Illegal aliens also are typically in telephonic contact with co-conspirators prior to and following their crossing in order to make smuggling arrangements, receive instructions, and report their locations after crossing. It is common for alien smugglers to be in contact with co-conspirators weeks to months in advance of an event to recruit drivers and to coordinate the event. It is also common for co-conspirators to continue to contact each other by phone calls, social media, or messaging applications when contact is lost with the driver after an apprehension has occurred.

9. Based upon my training, experience, and consultations with law enforcement officers experienced in alien smuggling investigations, and all the facts and opinions set forth in this affidavit, I know that cellular telephones (including their Subscriber Identity Module (SIM) card(s)) can and often do contain electronic evidence, including, for example, phone logs and contacts, voice and text communications, and data, such as emails, text messages, chats and chat logs from various third-party applications,

3

photographs, audio files, videos, and location data. In particular, in my experience and consultation with law enforcement officers experienced in alien smuggling investigations, I am aware that individuals engaged in alien smuggling may store photos and videos on their cell phones that reflect or show co-conspirators and associates engaged in alien smuggling, as well as images and videos with geo-location data identifying alien smuggling transportation routes, and communications to and from recruiters and organizers.

10. This information can be stored within disks, memory cards, deleted data, remnant data, slack space, and temporary or permanent files contained on or in the cellular telephone. Specifically, searches of cellular telephones may yield evidence:

   a. tending to indicate efforts to bring in aliens without lawful status for private financial gain or commercial advantage from Mexico into the United States;

   b. tending to identify accounts, facilities, storage devices, and/or services–such as email addresses, IP addresses, and phone numbers–used to bring in aliens without lawful status for private financial gain or commercial advantage;

   c. tending to identify co-conspirators, criminal associates, or others involved in the bringing in of aliens without lawful status for private financial gain or commercial advantage;

   d. tending to identify travel to or presence at locations, such as stash houses, load houses, or delivery points involved in the bringing in aliens without lawful status for private financial gain or commercial advantage;

   e. tending to identify the user of, or persons with control over or access to, the Target Devices; and/or

   f. tending to place in context, identify the creator or recipient of, or establish the time of creation or receipt of communications, records, or data involved in the activities described above.

## FACTS SUPPORTING PROBABLE CAUSE

11. On January 20, 2026, at approximately 11:50 P.M., Arnold COLORES (Defendant), a United States citizen, applied for admission into the United States from

4

Mexico via the Otay Mesa, California Port of Entry vehicle lanes as the sole visible driver of a Chevrolet Avalanche bearing California license plates. Upon inspection before a United States Customs and Border Protection (CBP) Officer, Defendant stated he was going to Buena Park, and his purpose of travel was to buy a pinata. Defendant declared a pinata, stated the vehicle belonged to his boss, and that he was not asked to bring anything to the United States. The CBP Officer conducted a cursory inspection of the vehicle and upon inspecting the truck bed's quarter panel compartment, he discovered a person concealed inside a non-factory compartment. The CBP Officer radioed for assistance and Defendant was secured in handcuffs and escorted to the security office for further inspection.

12. In the vehicle secondary lot, a CBP Officer took evidentiary photographs of the vehicle and conducted a physical inspection of the factory storage compartments on the truck bed. Upon inspection, the CBP Officer noticed a black plastic-like substance covering what should have been a void within the storage area. The CBP Officer utilized his flashlight and was able to see a person and pillow within the void and took a picture. The CBP Officer noticed bolts with shiny marks holding the plastic liner on the sides of the truck bed and non-factory screws on the outer side of the truck bed.

13. At approximately 12:05 A.M., the CBP Officer began removing the bolts on the rear passenger side of the truck bed by utilizing pliers and a socket wrench. After removal of the bolts, the CBP Officer pulled the black plastic liner off and noticed a female individual, later identified as Xiaofang HE (Material Witness), concealed in the passenger side quarter panel of the vehicle. Other CBP Officers successfully assisted in safely removing Material Witness from the confined space and escorted her to the security office for further disposition.

14. During a video-recorded interview, Material Witness admitted to being a citizen of China without documents to enter the United States. Material Witness stated she traveled to Tijuana, Mexico with the intent to cross into the United States. Material Witness stated once in the United States she would decide what city to go to. Material

Witness stated she intended to work and live in the Unites States. Material Witness claims she made all the arrangements with the smugglers. Material Witness claims if successfully smuggled into the United States, she would owe a smuggling fee of 200,000 Chinese Yuan.

15. Material Witness stated an unknown male instructed her to go into the void found in the rear quarter panel of the vehicle. Material Witness described the male as middle aged, with dark hair, without a beard and above 5'5 ft in height. Material Witness stated the male had to pull the cover of the quarter panel and instructed her crawl under it in order to access the space. Material Witness stated she was instructed to lay flat in the space. Material Witness stated the space was very tight and there was very little air. Material Witness stated she tried to push the cover in order to get more air but was unable to. Material Witness stated she could not have opened the cover by herself. Material Witness stated she tried to get out but was unable to. Material Witness stated she pushed on the cover and knocked on it in efforts to have the vehicle stop. Material Witness stated she was in the quarter panel for approximately 40 minutes.

16. The **Target Device** was discovered on Defendant's person. During the video-recorded interview, Defendant claimed ownership of **Target Device,** unlocked it, and utilized it to make multiple phone calls. The **Target Device** was subsequently seized and is now being held as evidence by Customs and Border Protection.

17. Based upon my experience and training, consultation with other law enforcement officers experienced in alien smuggling investigations, and all the facts and opinions set forth in this affidavit, I believe that telephone numbers, contact names, electronic mail (email) addresses, appointment dates, messages, pictures and other digital information are stored in the memory of the **Target Device**. In light of the above facts and my experience and training, there is probable cause to believe that Defendant was using the **Target Device** to communicate with others to further the smuggling of illegal aliens into the United States. Further, in my training and experience, alien smugglers may be involved in the planning and coordination of transporting and smuggling events in the days

6

|   |   |
|---|---|
| 1 | and weeks prior to an event. Co-conspirators are also often unaware of a defendant's arrest |
| 2 | and will continue to attempt to communicate with a defendant after their arrest to determine |
| 3 | the whereabouts of the aliens. Based on my training and experience, it is also not unusual |
| 4 | for individuals, such as Defendant, to attempt to minimize the amount of time they were |
| 5 | involved in their smuggling activities, and for the individuals to be involved for weeks and |
| 6 | months longer than they claim. Accordingly, I request permission to search the **Target** |
| 7 | **Device** for data beginning on January 6, 2025, up to and including January 20, 2026. |

## METHODOLOGY

18.   It is not possible to determine, merely by knowing the cellular telephone's make, model and serial number, the nature and types of services to which the device is subscribed and the nature of the data stored on the devices. Cellular devices today can be simple cellular telephones, tablets, and text message devices, can include cameras, can serve as personal digital assistants and have functions such as calendars and full address books and can be mini-computers allowing for electronic mail services, web services and rudimentary word processing. An increasing number of cellular service providers now allow for their subscribers to access their device over the internet and remotely destroy all of the data contained on the device. For that reason, the device may only be powered in a secure environment or, if possible, started in "flight mode" which disables access to the network. Unlike typical computers, many cellular telephones do not have hard drives or hard drive equivalents and store information in volatile memory within the device or in memory cards inserted into the device. Current technology provides some solutions for acquiring some of the data stored in some cellular telephone models using forensic hardware and software. Even if some of the stored information on the device may be acquired forensically, not all of the data subject to seizure may be so acquired. For devices that are not subject to forensic data acquisition or that have potentially relevant data stored that is not subject to such acquisition, the examiner must inspect the device manually and record the process and the results using digital photography. This process is time and labor intensive and may take weeks or longer.

7

19.     Following the issuance of this warrant, a case agent familiar with the investigation will collect the subject cellular telephone and subject it to analysis. All forensic analysis of the data contained within the telephone and its memory cards will employ search protocols directed exclusively to the identification and extraction of data within the scope of this warrant.

20.     Based on the foregoing, identifying and extracting data subject to seizure pursuant to this warrant may require a range of data analysis techniques, including manual review, and, consequently, may take weeks or months. The personnel conducting the identification and extraction of data will complete the analysis within ninety (90) days of the date the warrant is signed, absent further application to this court.

## PRIOR ATTEMPTS TO OBTAIN THIS EVIDENCE

21.     Law enforcement has not attempted to extract data from the **Target Device**. Law enforcement is now seeking to obtain evidence in the **Target Device** through this warrant.

## CONCLUSION

22.     Based on the facts and information set forth above, there is probable cause to believe that a search of the **Target Device** will yield evidence of alien smuggling violation of Title 8, United States Code, Sections 1324 and Title 18 United States Code, Section 2, Aiding and Abetting.

23. Accordingly, I request that the Court issue warrant authorizing law enforcement to search the item described in Attachment A, and seize the items listed in Attachment B using the above-described methodology.

///
///
///
///
///
///

8

I swear the foregoing is true and correct to the best of my knowledge and belief.

_____
Desirae M. Zavala, CBP Officer
U.S. Customs and Border Protection

Sworn and attested to under oath by telephone, in accordance with Federal Rule of Criminal Procedure 4.1, on January 21, 2026.

*Barbara L Major*
_____
HON. BARBARA L. MAJOR
UNITED STATES MAGISTRATE JUDGE

9